W. N. PROCTOR & CO. v. UNITED STATES.

(Circuit Court, D. Massachusetts. June 13, 1905.)

No. 1,327.

CUSTOMS DUTIES—CLASSIFICATION—NUTGALL EXTRACT.

    Extract of nutgalls, an article which is made by grinding nutgalls, digesting the powder in water, and filtering to remove impurities, a chemical being added as a preservative without working any chemical change, is not dutiable as tannin or tannic acid, under paragraph 1, Schedule A, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626], nor as a chemical compound under paragraph 3, Schedule A, § 1, c. 11, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1627], but either directly or by similitude as "drugs, such as * * * nutgalls, * * * advanced in value or condition," under paragraph 20, Schedule A, § 1, c. 11, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1628].

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision in question, see G. A. 5,333, T. D. 24,395, which

affirmed the assessment of duty by the collector of customs at the port of Boston on merchandise imported by W. N. Proctor & Co.

Hatch, Keener & Clute (J. Stuart Tompkins, of counsel), for importers.

Melvin O. Adams, U. S. Atty., and Wm. H. Garland, Ass't U. S. Atty.

LOWELL, Circuit Judge. This case concerns the classification for duty of extract of nutgalls. The government contended that it should be classified under paragraph 1 of the act of July 24,.1897, c. 11, § 1, Schedule A, as tannic acid or tannin, dutiable at 50 cents per pound. 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626]. For the history of this paragraph, see Rev. St. pp. 473, 481; Act March 3, 1883, c. 121, 22 Stat. 495; Act Oct. 1, 1890, c. 1244, § 1, Schedule A, par. 6, 26 Stat. 567; Act Aug. 27, 1894, c. 349, § 1, Schedule A, par. 5, 28 Stat. 509. The importer contended that the duty should be assessed under one of the three following provisions:

(1) Paragraph 20: "Drugs such as * * * nutgalls. * * * Any of the foregoing which are drugs and not edible, but which are advanced in value or condition by refining, grinding or other . process, and not specially provided for in this Act, one-fourth of one cent per pound and in addition thereto ten per cent. ad valorem." Act July 24, 1897, c. 11, § 1, Schedule A, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1628]. For the history of this paragraph, see Act March 3, 1883, c. 121, 22 Stat. 494; Act Oct. 1, 1890, c. 1244, § 1, Schedule A, par. 24, 26 Stat. 568. In Act Aug. 27, 1894, c. 349, § 1, Schedule A, par. 16½, 28 Stat. 509, nutgalls are not mentioned.

(2) Paragraph 22: "Extracts and decoctions of logwood and other dyewoods and extracts of barks, such as are commonly used for dyeing or tanning, not specially provided for in this act, seven-eighths of one cent per pound. * * * Extracts of sumac, and of woods other than dyewoods, not specially provided for in this act, five-eighths of one cent per pound." Act July 24, 1897, c. 11, § 1, Schedule A, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1628]. For history, see Rev. St. p. 479; Act March 3, 1883, c. 121, 22 Stat. 493; Act Oct. 1, 1890, c. 1244, § 1, Schedule A, par. 26, 26 Stat. 568; Act Aug. 27, 1894, c. 349, § 1, Schedule A, par. 18, 28 Stat. 510.

(3) Paragraph 3: "Chemical compounds not specially provided for in this act." Act July 24, 1897, c. 11, § 1, Schedule A, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1627]. It is to be observed that nutgalls were admitted free under all the above-mentioned tariff acts..

Under the Revised Statutes extract of nutgalls was classified by the Treasury Department as a manufactured article not otherwise provided for, the question being between this classification and a classification as an extract or decoction of dyewoods. There was no mention in the Revised Statutes of nutgalls "advanced in value or condition." No question was made of a classification as tannin or tannic acid, which two articles were separately classified in that tariff. T. D. 3,553. See T. D. 3,079; T. D. 2,095. In consequence of a decision of the Circuit Court, the ruling of the

department was soon revised, and thereafter duty was assessed upon extract of nutgalls as an extract or decoction of dyewoods. T. D. 3,842. See T. D. 3,898. The act of 1883 first provided a separate classification for drugs such as nutgalls advanced in value or condition. How the department classified extract of nutgalls under the acts of 1883 and 1890 was not shown. Under the act of 1894 the mention of nutgalls advanced in value or condition was omitted, and the department classified extract of nutgalls as tannin or tannic acid, rather than return to the former classification as an extract or decoction of dyewoods. T. D. 17,354. The act of 1897 reinserted the provision concerning nutgalls advanced in value or condition as quoted above. In T. D. 19,052, the department (for what reason does not appear) went back to its most ancient ruling, and classified extract of nutgalls as a manufactured article not otherwise provided for. But two years later the Board of General Appraisers in a careful opinion classified extract of nutgalls as nutgalls advanced in value. G. A. 4,716, T. D. 22,278. After this classification had stood for three years, the Board of General Appraisers overruled itself, and decided that extract of nutgalls should be classified as tannic acid or tannin. G. A. 5,333; T. D. 24,395.

It appears that extract of nutgalls is made by grinding nutgalls, digesting the powder in water, and filtering to remove impurities. To keep the filtrate from fermenting or molding, a chemical, probably sulphurous acid, is added as a preservative. The Board of General Appraisers has found that the chemical thus added works no chemical change in the article. Analysis shows that the filtrate contains about 25 per cent. of tanning matter (tannic acid chiefly, with gallic acid in much smaller, but varying, proportion), more than 50 per cent. of water and volatile matter, and a large organic and mineral residue. Otherwise stated, the article here in question contains "the active principle of tannic acid, plus certain gummy matters, plus certain salts which dissolve from the woody substance," plus water. This is "extract of ground nutgalls, which, of course, is far more valuable than the ground mass containing the woody fiber or the whole galls before grinding." Tannin is chemically known as digallic anhydrate, having a symbol of $C_{14}H_{10}O_9$. According to the testimony it may be prepared by treating the filtrate above described with acetate of lead, precipitating tannate of lead, which precipitate is decomposed by hydrogen sulphide, leaving tannic acid in solution. The solution may be evaporated to produce the anhydrate. Tannin may also be produced by extracting with alcohol and ether, and washing the extract with water. See Wurtz, Dict. de Chimie, art. "Tannin." It may also be prepared from substances other than nutgalls. As stated by the Board of General Appraisers, the preparation of tannin from extract of nutgalls involves chemical reactions, while it seems that the preparation of extract of nutgalls (the imported article here in question) from whole nutgalls involves only mechanical changes. The Board of General Appraisers has found that extract of nutgalls, chemically considered, is not tannic acid. The decision of the board in favor of the government was based

(1) upon a finding that the term "tannic acid," as used in trade, includes extract of nutgalls; and (2) on the ground that extract of nutgalls is more closely similar in material, character, and uses to tannic acid than to any other article mentioned in the tariff act.

1. As to the first consideration stated above, there is now before this court considerably more testimony than that upon which the finding of the board was based. Four witnesses testified for the importers (only one heard by the board); all of them to the effect that extract of nutgalls was not known as tannin, tannic acid, or liquid tannic acid, and that extract of nutgalls and tannic acid were commercially two different things. Three witnesses testified for the United States. Of these Drobegg apparently knew nothing of commercial nomenclature. Rau testified that he sold the same article as liquid tannin and extract of nutgalls, marking the barrels in the one case "liquid tannic acid" and in the other "extract of nutgalls," to suit the vagaries of the trade. He further testified, however, that, when tannic acid or tannin is inquired for, the dry material is understood. Bühl testified that there was no difference between extract of nutgalls and liquid tannic acid, except in name. Upon the whole, the testimony regarding commercial nomenclature as now presented to the court makes for the importer, rather than for the United States.

2. If we pass from nomenclature to a consideration of the real nature of the substance imported, we find that by the tariff act nutgalls are admitted free. That they are a drug within the provisions of paragraph 20 is pretty plain. Tannin is a drug, used in medicine and in the arts; and nutgalls, from which it is prepared, are therefore a drug, like peruvian bark, from which quinine is made. The Board of General Appraisers did not question that nutgalls were a drug. That nutgalls are more directly used as a drug is stated in Enc. Brit. 9th Ed. X, 45. Ground nutgalls, nutgalls "advanced in value by grinding," are therefore specially classified for duty. The powder is a mixture of tannin, gummy material, mineral salts, woody material, and, I suppose, a certain amount of water. For this mixture a particular rate of duty is provided. Powdered nutgalls in this state are an article of commerce. On the other hand, tannin, one of the components of the powder above described, is also specially classified for duty. Which of the two specially classified articles, ground nutgalls and tannin, does the imported article, extract of nutgalls, most nearly resemble? In composition the extract is differentiated from the powdered nutgalls by the addition of water and the exclusion of most of the woody material. In composition it is differentiated from tannin by the absence in the latter of the components which make up three-fourths of the substance of the former. In appearance the extract is differentiated from the powder as a filtrate is differentiated from a powder. In appearance it is differentiated from tannin as a filtrate is differentiated from crystals or powder. In preparation the extract is differentiated from the powder by digesting the latter in water and by filtering the decoction. In preparation it is differentiated from tannin, inasmuch as, accord-

ing to the General Appraisers, tannin is produced from the powder by two or more chemical reactions. As above stated, however, it may be possible to make tannin from the powder without chemical reaction involving the tannin. In commercial use the extract is differentiated from the powder in that the latter is commercially useless as a mordant, though possessing mordant qualities. In use the extract is differentiated from tannin by its cheapness, which makes it available where tannin would be too costly. The commercially important principle of nutgalls is tannin or tannic acid. This is also the commercially important principle of powdered nutgalls. Upon the whole, it seems to me that extract of nutgalls is more closely similar to nutgalls advanced in value by grinding, etc., than to tannin or tannic acid.

If extract of nutgalls should not be classified under paragraph 20, a strong argument could be made for classification under paragraph 22. That paragraph imposes a duty upon decoctions and extractions of dyewoods and barks used for dyeing, and upon extracts of woods other than dyewoods. Extract of nutgalls is an extract of a diseased growth of wood or bark, and unless more specifically described elsewhere, can hardly escape altogether the terms of paragraph 22. As more specific description is found in paragraph 20, I am of opinion that it is taxable thereunder.

Judgment for the importers.